**Joseph C. McCARTY, III,**
**Plaintiff/Appellee,**

v.

**Sharon Ann Jones McCARTY,**
**Defendant/Appellant.**

Court of Appeals of Tennessee,
Western Section, at Jackson.

Oct. 7, 1992.

Application for Permission to Appeal
Denied by Supreme Court
Jan. 25, 1993.

Daniel Loyd Taylor, Daniel Loyd Taylor Law Office, Memphis, for defendant/appellant.

Joe M. Duncan, Burch, Porter & Johnson, Memphis, for plaintiff/appellee.

HIGHERS, Judge.

In this domestic relations case, the appellant has appealed from an order of the Chancery Court at Fayette County which reduced the monthly alimony payments payable to the appellant, denied the appellant's petition for increased child support and denied appellant's request for attorney's fees.

The parties were married on February 29, 1968. The Chancery Court entered the final decree of divorce on June 13, 1979. The final decree provided for the payment of alimony in the amount of $1,200 per month plus 25% of appellee's personal service income in excess of $40,000, not to exceed total monthly alimony payments of $2,200 per month. The court awarded custody of the parties' minor children, then ages seven and five, to appellant, and the divorce decree provided for child support in the amount of $250 per month per child until such child should reach the age of eighteen, with the $250 to increase by 5% per year beginning January 1, 1980. The divorce decree also provided that appellee would pay for the children's private high school tuition and expenses and their college tuition and expenses.

At the time of their divorce in 1979, appellee was a partner in the Waring Cox Law Firm in Memphis, Tennessee. The appellee's gross income was approximately $58,-133, and his income as shown on his 1979 tax return was $23,800. His net worth was approximately 1.1 million. At the time of the hearing in 1990, the appellee was vice president of the legal department at Federal Express. The appellee's total income in 1990 was approximately $204,000, and his net worth was $650,000.

In 1979, appellant earned approximately $3,000, $1,300 of which she earned as a part-time pharmacist. In 1990, appellant's total income was approximately $43,000, excluding alimony.

On May 5, 1991, appellee filed a petition to terminate his alimony obligations. On June 6, 1991, appellant filed a petition for contempt and for modification of child support. The parties resolved the contempt issue prior to the hearing. On October 15, 1991, an order modifying the final decree of divorce was entered reducing the wife's alimony payments from $2,200 to $1,700 per month beginning July 1, 1992. The court denied the plaintiff's request for increased child support and ordered each party to pay his or her own attorney's fees.

The appellant presents the following issues on appeal: (1) Did the trial court err in decreasing alimony from $2,200 to $1,700 per month, (2) did the trial court err in denying her petition for increased child support, and (3) did the trial court err in denying her request for attorney's fees.

■ Our review of this case on appeal is governed by T.R.A.P. 13(d) which provides that the review of findings of fact by the trial court in a civil action shall be *de novo* upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise. *Luna v. Luna,* 718 S.W.2d 673, 675 (Tenn.App.1986); *Lancaster v. Lancaster,* 671 S.W.2d 501, 502 (Tenn.App.1984). *Jones v. Jones,* 784 S.W.2d 349, 352 (Tenn. App.1989).

■ The parties' final decree of divorce was entered June 13, 1979, and it was twice modified by consent orders in 1980 and 1981. In 1984, the General Assembly amended T.C.A. § 36–5–101(d) to provide that alimony should be temporary in duration and rehabilitative in nature whenever possible. T.C.A. § 36–5–101(d), however, does not apply retroactively to alimony awards made prior to 1984, to the extent that it allows courts to terminate alimony payments because an alimony recipient has been rehabilitated or has had time for rehabilitation. *Hays v. Hays,* 709 S.W.2d 625, 627 (Tenn.App.1986).

Therefore, a court may increase or decrease an alimony award in this case only upon a showing of a substantial and material change of circumstances. T.C.A. § 36–5–101(a)(1). The party seeking modification in alimony or child support has the burden of showing a substantial and material change in circumstances. *Seal v. Seal,* 802 S.W.2d 617, 620 (Tenn.App.1990).

At the hearing on the parties' petitions, the appellee argued that the appellant's income had increased to an amount sufficient to provide her with the standard of living that she enjoyed at the time of the parties' marriage. The appellee also argued that his "available" income was not sufficient to pay the alimony and child support obligations because (1) his salary at Federal Express had decreased from approximately $212,658 in 1989 to $158,-700 in 1990, (2) he is allowed to deduct only 30% of the alimony payments under the present tax law as opposed to a 50% deduction under the 1979 laws and he is no longer able to shelter his income with investment losses, and (3) the cost of education has increased greatly since 1979.

■ We first address appellee's contention of insufficient available income or inability to pay. The appellee's total income has increased from $23,000 in 1979 to $204,000 in 1990. The relevant change of circumstance is the appellee's increase in salary from 1979 to 1990, not the appellee's decrease in salary in 1989. Thus, this factor in appellant's argument is without merit.

■ To be material, the change of circumstances must be shown to have been unforeseeable at the time the decree was entered. *Seal, supra* at 620; *Jones, supra* at 353. We take notice that tax consequences are usually considered in the drafting of property and support agreements and that changes in the Federal Income Tax Laws are generally foreseeable, even though the exact manner of the change may not be foreseeable. In addition, we do not think that the changes in the tax laws have substantially affected the appellee's ability to pay alimony because his income has increased since 1979. Thus, this factor in appellee's argument is also without merit.

■ Lastly, appellee argued that the increased cost of education has adversely affected his ability to pay alimony. In 1990, the appellee paid approximately $1,187 for his daughter's last semester in high school at Hutchison, $10,753 for her first semester at Pepperdine University and approximately $5,633 for his son's tuition and expenses at Memphis University School. Apparently, appellee is no longer obligated to provide for his son's college education. In any event, the appellee's obligation to provide for his children's education is part of the divorce decree and is not, in itself, a substantial and material change in circumstances. *Seal, supra* at 620. The increased cost of a higher education is not a substantial and material change in circumstances because the appellant's income has increased substantially since the divorce. Therefore, the increased cost in education has not substantially affected his ability to pay his alimony obligation. Furthermore, the appellee graduated from Vanderbilt Law School and has been a practicing attorney for over twenty years. He knew at the time of the divorce of the escalating cost of higher education at a private institution. *Seal, supra* at 620; *Jones, supra* at 353. The obligor's ability to pay is an important consideration for the court in setting alimony, *Campanali v. Campanali*, 695 S.W.2d 193, 197–98 (Tenn.App.1985), but it does not justify a reduction in the circumstances of this case.

The appellee also argued that the appellant no longer needed alimony because her income had increased from $3,000 in 1979 to $43,000 in 1990. The appellant's income increased because she returned to employment as a full-time pharmacist. She also receives interest from assets which she received as part of the parties' property settlement.

■ An alimony recipient's income alone does not warrant a reduction in the husband's alimony obligations. *Norvell v. Norvell*, 805 S.W.2d 772, 774–75 (Tenn.App.1990); *Seal, supra* at 620; *Threadgill v. Threadgill*, 740 S.W.2d 419, 423–24 (Tenn.App.1987); *Dodd v. Dodd*, 737 S.W.2d 286, 288–89 (Tenn. App.1987); *Jones, supra*, at 353–54. Although the need of the spouse is one of the primary factors in determining the proper amount of alimony, modification of alimony based solely on a wife's increased earnings is not proper unless the husband introduces evidence indicating that the amount of alimony initially awarded was based upon a presumption that the wife would not continue to increase her income through the pursuit of her career. *Jones, supra* at 353–54; *Threadgill, supra* at 424.

■ The appellant testified that she had worked full time as a licensed pharmacist while her husband was in law school, that her pharmacist's license was referred to during the settlement negotiations and that she had agreed to the $2,200 alimony cap because she would be returning to work. The appellee disputes that the appellant's intention to return to work full time as a pharmacist was made known to him at the time of the settlement. In reviewing the record and evidence, we think it is sufficiently foreseeable that the appellant could not raise two children and maintain the standard of living to which she was accustomed prior to the divorce on the alimony and child support payments provided for in the divorce decree. The appellant's interest income from property received in the property settlement is not a sufficient basis on which to reduce alimony payments because the appellee has not produced any evidence to indicate that this interest income was unanticipated or unforeseen. *Seal, supra* at 621; *Norvell, supra* at 775. Furthermore, there is no evidence in this record to indicate that the alimony is punitive in nature, *McClung v. McClung*, 29 Tenn.App. 580, 198 S.W.2d 820, 822 (1946), or that the appellant is now able to enjoy a higher standard of living now than before the divorce. *Norvell, supra* at 776.

We think that the evidence preponderates against a reduction in alimony and accordingly, the appellee's obligation to pay periodic alimony to the appellant is reinstated at $2,200 per month, retroactive to July of 1992.

■ The appellant's second issue is that the court erred in denying her an increase in child support. Modification of child support is also governed by T.C.A. § 36–5–101(a)(1), and the burden of showing a substantial and material change in circumstances is on the

appellant. *Seal, supra* at 620. At the hearing, the appellant presented her sworn affidavit of income and expenses setting forth the increased expenses incurred in supporting the parties' son who is now seventeen years old. The monthly expenses have increased from $562.90 in 1979 to $2,859.32 in 1991. Her affidavit showed, *inter alia,* an increase in expenses with regard to clothing, car insurance and allowances. The appellee offered no evidence or testimony to rebut the proof submitted by the mother other than a statement of expenses attributable to supporting his son which totaled $10,454 and included $4,656 for actual child support payments and $5,633 for tuition and expenses.

■ We agree with the appellant's argument that the cost of care for a child progressively increases as he or she becomes older, and that the increased cost, when established by competent proof, is a substantial and material change in circumstances on which to grant an increase in child support. As appellee points out in his brief, the original child support payment of $250 per month has increased over the past eleven years to $388 per month. We think that a $138 increase in child support is insufficient to deal with the expenses related to his son today, as shown in the proof. The appellant has the financial ability to contribute to his son's increased expenses, and the appellee should not have to bear the cost of the increased expenses alone. *Seal, supra* at 622.

■ The appellant has asked this Court to increase the child support payments to $1,500 or in an amount that is in accordance with the child support guidelines promulgated by the Tennessee Department of Human Services under the Uniform Administrative Procedures Act which provide:

**1240-2-4-.03 Guidelines for Calculating Child Support Awards.**

... (2) The child support award is based on a flat percentage of the net income (as defined in paragraph 4 below) of the obligor depending on the number of children to be supported. This formula presumes that the obligee will be expending at least an equal percentage of net income for the support of children from whom support is sought.

. . . .

(5) After determining the net income of the obligor, that amount is to be rounded up to the next dollar. That amount is then multiplied by the percentage below that corresponds to the number of children to be supported. The percentages are:

| # of children | 1 | 2 | 3 | 4 | 5 or more |
|---|---|---|---|---|---|
| % of income | 21% | 32% | 41% | 46% | 50% |

**1240-2-4-.04 Criteria for Deviating from Guidelines.**

... (2) There are other cases where guidelines are neither appropriate nor equitable when a court so finds. Guidelines are inappropriate in cases including but not limited to, the following:

(1) In case where the net income of the obligor as calculated in the above rule exceeds $6,250 per month. These cases may require such things as the establishment of educational or other trust funds for the benefit of the child(ren) or other provisions as may be determined by the court.

In the present case, it is undisputed that the appellee's income, as that term is defined by the guidelines, exceeds $6,250 per month. It would seem unreasonable and unjust to rule that the guidelines have no usefulness in the determination of just child support if the obligor has a monthly income of $6,250.01 but are presumptively controlling if the income is $6,250 per month, a difference of one cent. A more reasonable interpretation of subsection 2(a) is that, when the income is more than $6,250, the presumption of correct amount support does not apply to the excess of $6,250. This does not mean that the guidelines forbid the award of support for one child of more than $1,312 (21% of $6,250), but that an award above that amount may not be based on the presumptive effect of the guidelines but upon competent evidence.

■ We think that increasing the appellee's child support obligation to $1,312 is sufficient based on the record in this case. Accordingly, we reverse and raise the child support payments to $1,312 retroactive to October 15, 1991, the date of the court's order denying appellant's petition for an increase in child support.

The appellant's last issue on appeal is that the court erred in refusing to award her attorney's fees for defending her entitlement to alimony and asserting her child's rights to increased support payments. The decision to award attorney's fees in divorce actions rests in the discretion of the trial judge. *Threadgill, supra* at 426; *Seal, supra* at 623. On appeal, this Court will not interfere with the trial court's decision to award attorney's fees absent a showing of an abusive discretion. *Threadgill, supra* at 426. *Seal, supra* at 623. If the wife has adequate funds for her needs as well as the payment of her attorney's fees, an award of attorney's fees is not required. *Franklin v. Franklin,* 746 S.W.2d 715 (Tenn.App.1987).

The Chancellor may have denied attorney's fees to the appellant because he determined that she had adequate funds to pay her fees. We, however, agree with the appellant's argument that she should not have to pay the cost of defending her entitlement to alimony and asserting her child's right to increased support payments out of her employment income which, when combined with the support payments, still does not provide the standard of living to which she was accustomed during the parties' marriage. *Seal, supra* at 624. Accordingly, we reverse the trial court's order and remand for a determination of the appellant's attorney's fees.

This case is reversed and remanded. Costs are taxed to the appellee.

TOMLIN, P.J., (W.S.), and FARMER, J., concur.