IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 25, 2002 Session

**STATE OF TENNESSEE, DEPARTMENT OF CHILDREN'S SERVICES v.
NFGWP, IN RE: KSG and ALW**

**Direct Appeal from the Juvenile Court for Scott County**
**No. 9301     Hon. Jamie L. Cotton, Jr., Judge**

**FILED JULY 29, 2002**

**No. E2001-01996-COA-R3-CV**

The Trial Court terminated the mother's parental rights to two minor children.  On appeal, we affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Juvenile Court Affirmed.**

HERSCHEL PICKENS FRANKS, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and CHARLES D. SUSANO, JR., J., joined.

Janette L. Taylor, Oneida, Tennessee, for Appellant.

Paul G. Summers, Attorney General and Reporter, and Douglas Earl Dimond, Assistant Attorney General, Nashville, Tennessee, for Appellee.

**OPINION**

In this action, the Trial Court terminated the parental rights of NFGWP, the mother to her minor children, KSG and ALW.  On appeal, we affirm.

At the conclusion of the trial, the Trial Court found that the mother was a person of limited mental comprehension, but was capable of complying and cooperating, when required to do so.  The Court found the mother's position that she did not know what was happening to one child was not credible.  The Court noted that KSG was sexually abused daily for months, and that the mother never took the first step toward recovering her family, and never admitted that the abuse occurred.  Further, the Court found the mother's efforts to comply with the plan of care were token, at best, and the mother always seemed to be angry and focused on herself, and that she never focused on doing what she needed to reclaim her children.  The Court also found that the grandmother who

had intervened did not offer a stable solution, because the children need security and permanency.

The Court then ordered a Termination of Parental Rights and entered a Final Decree of Guardianship as to each of the children, finding the mother had abandoned the children by failing to visit and failing to pay support, the children had been removed for six months, the conditions which led to their removal still persisted, there was little likelihood that the conditions could be remedied in the near future, and a continuation of the parent-child relationship would greatly diminish the childrens' chances of being adopted. Further, the Court found the mother had failed to substantially comply with the reasonable responsibilities set out in the foster care plan.

Then, the Court found that it was in the children's best interests to terminate mother's parental rights and award custody, control and guardianship to the state, with the right to place the children for adoption.

The standard of review of the Trial Court's findings of fact is *de novo* with a presumption of correctness, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *McCarty v. McCarty*, 863 S.W.2d 716,719 (Tenn. Ct. App. 1992). No presumption of correctness attaches to the trial court's legal conclusions. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87 (Tenn. 1993).

A parent has a fundamental right to the care, custody, and control of her children. *Stanley v. Illinois*, 405 U.S. 645, 92 S. Ct. 1208 (1972). This right is not absolute, however, and may be terminated if there is clear and convincing evidence justifying such termination under the applicable statute. *Santosky v. Kramer*, 455 U.S. 745, 102 S. Ct. 1388 (1982); *In re Drinnon*, 776 S.W.2d 96 (Tenn. Ct. App. 1988); Tenn. Code Ann. §36-1-113(c). Further, all issues in a case involving termination of parental rights are premised on the foundation of what is in the child's best interest. *Tennessee Dept. of Human Services v. Riley*, 689 S.W.2d 164 (Tenn. Ct. App. 1984); Tenn. Code Ann. §36-1-113(c).

Our statutory scheme provides several grounds upon which a termination of parental rights may be sought, including, but not limited to, abandonment, substantial noncompliance by the parent with the statement of responsibilities in the plan of care, and/or that the child has been in custody for more than six months and the conditions which led to the removal still exist and are unlikely to be remedied, and that continuation of the parent-child relationship greatly diminishes the child's chances of integration into a safe, stable and permanent home. Tenn. Code Ann. §36-1-113(g).

In this case, the Court found that grounds existed for termination (and had been established by clear and convincing evidence) based on the above reasons. The court thus found that termination was in the children's best interests. In reviewing a trial court's decision to terminate parental rights, we have previously recognized that we must affirm the termination if the record contains clear and convincing evidence to support any of the bases found by the trial court. *In the Matter of MCG*, 1999 WL 332729 (Tenn. Ct. App. May 26, 1999).

In this case, the mother denied knowing that the abuse was occurring, which the Trial Court found to be incredible, although there was evidence that she was made aware of the abuse. Several Department workers testified regarding the mother's inability to admit that any abuse took place, and her general lack of remorse, concern, and cooperation. There was evidence the mother never complied with her responsibilities under the plan of care, and the children had been in state custody for almost seven years at the time of trial. As to the mother's awareness of the abuse, the Court found that her testimony was not credible, and the evidence further establishes that the mother was clearly advised of the plan of care which she failed to execute, but had stated unequivocally that she never intended to comply with the plan of care.

The requirements of the parenting plan required the mother to accept responsibility for failure to protect the daughter from sexual abuse, to comply with all court orders regarding the children, to comply with the request of case managers, as pertaining to treatment and aftercare, to attend counseling geared toward recognizing effects of abuse on the child, to pay child support of $25.00 per week, and to maintain housing that was safe and free of environmental hazards. We hold that the requirements of the permanency plan are reasonable and related to remedying conditions which required foster placement, as required by Tenn. Code Ann. §37-2-403(a)(2)(c). *See*, *In the Matter of: Oliver Ray Valentine, Jr.,* _____ S.W.3d _____ (Tenn. filed July 19, 2002 at Jackson).

The Trial Court found substantial non-compliance with the plan, and we agree. Tenn. R. App. P. 13(d). The record shows that the mother did procure housing free of environmental hazards, but needed a larger apartment to accommodate the children. The evidence established the mother was never willing to admit that abuse happened, and would not take responsibility for failing to protect the children. The mother failed to undergo counseling and at one point an appointment was made with a psychologist for the mother, but she failed to keep the appointment and in general exhibited hostility and disregard for the plans. The mother failed to support the children, although she was drawing SSI benefits. Grounds for termination of parental rights were established by clear and convincing evidence.

Pursuant to the best interests and considerations listed in §36-1-113(i), the proof supports the Trial Court's conclusion that termination was in the children's best interest. There was no showing that the mother had made any serious adjustments, so as to make her home safer, except that she divorced her husband after he was sent to prison for sexually abusing the child. The evidence established there was no meaningful relationship between the mother and children, that the children were doing well in their current placements, and that changing their environments would likely be detrimental to their well-being. There was evidence that the girls had the possibility of being adopted and thus, would likely be integrated in to a safe, stable and permanent home if the mother's rights were terminated.

Appellants argue that the evidence shows the children love their grandmother and desired to live with her or see her regularly, but there was evidence that neither of the girls showed a real interest in seeing their mother.

The grandmother argues that the Trial Court erred in terminating the mother's rights because it effectively terminated her right to visit the children as well. She argues that the Court should have placed the children with her, pursuant to Tenn. Code Ann. §37-2-403(d), which states that the department shall seek to place the child "with a fit and willing relative if such placement provides for the safety and is in the best interest of the child." The Trial Court found, however, that placement with the grandmother was not in the girls' best interests, due to the fact that the childrens' older brother was residing in the grandmother's home, and he had participated in the sexual abuse of one of these girls.[1]

We conclude there was clear and convincing evidence that the mother failed to substantially comply with the plan of care, as well as establishing other grounds for termination. Accordingly, we affirm the Judgment of the Trial Court terminating the mother's parental rights as being in the best interest of the children.

The cost of the appeal is assessed to appellant.

_____
HERSCHEL PICKENS FRANKS, J.

_____

[1]At the beginning of the trial, the Trial Judge stated he would allow the grandmother to participate in the hearing to the extent that the lack of her presence in the girls' lives might be detrimental if he allowed the termination, and the Court advised the grandmother that even if the mother's rights were terminated, she could still seek adoption or guardianship of the children in a separate proceeding.